1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

| | |
|---|---|
| VICTOR PARRA, Jr.,<br><br>                                    Plaintiff,<br><br>            v.<br><br>R. HERNANDEZ, et al.,<br><br>                                    Defendants. | Civil No.    08cv0191 H (CAB)<br><br>**REPORT AND RECOMMENDATION REGARDING:**<br>**(1) DEFENDANTS COWAN, HERNANDEZ, LIMON, AND LILES' MOTION TO DISMISS THE COMPLAINT; AND**<br>**(2) DEFENDANT CDCR'S MOTION TO DISMISS THE COMPLAINT**<br>**[Doc. Nos. 12, 14.]** |

18

**I.  INTRODUCTION**

19

20

21

22

23

24

25

26

Plaintiff Victor Parra, Jr., a state prisoner proceeding *pro se*, has filed a civil rights action pursuant to 42 U.S.C. § 1983.  On May 23, 2008, Defendants P. Cowan, R. Hernandez, R. Limon, and W. Liles, employees of the California Department of Corrections and Rehabilitation at R.J. Donovan State Prison, moved to dismiss all claims against Defendants Limon and Liles, and certain claims against Defendants Cowan and Hernandez.  On July 10, 2008, Defendant California Department of Corrections and Rehabilitation ("CDCR"), a state agency, moved to dismiss the Complaint as it pertains to Defendant CDCR.[1]  Plaintiff did not submit an opposition.

27

28

---

[1] Defendant CDCR was not part of the original motion to dismiss because it was not served with the Complaint until July 7, 2008.  [*See* Doc. No. 15 at 2.]  Additionally, although the Complaint also named A.L. Cota as a defendant, this individual has not yet been served.  On July 14, 2008, this Court granted Plaintiff an extension until September 10, 2008, to serve A.L. Cota.  [Doc. No. 18.]

1    For the reasons that follow, this Court recommends Defendants' motion be **GRANTED**.

2 Furthermore, this Court recommends the state law causes of action against Defendant CDCR be

3 **DISMISSED sua sponte without leave to amend**, and that Defendant CDCR's motion to dismiss

4 therefore be **DENIED as moot**.

5                                  **II.  BACKGROUND**

6    At all relevant times, Plaintiff was incarcerated at R.J. Donovan State Prison ("Donovan").  The

7 Complaint and attached exhibits[2] allege the following facts:

8    Plaintiff has an anxiety disorder and at the time of the incident was classified as having safety

9 concerns.  (Complaint at ¶¶ 2, 11.)  On or about September 28, 2006, Plaintiff, who had been housed in

10 administrative segregation, was ordered by Defendants Limon and Liles to double cell with inmate

11 Duran.[3]  (Complaint at ¶ 2.)  Inmate Duran was classified as a general population inmate.  (Complaint at

12 ¶ 1.)  Plaintiff had double celled with at least two other general population inmates in the past without

13 incident.  (Complaint at ¶ 49.)  Defendant Limon notified Plaintiff that Operational Plan #85 required

14 inmates to double cell, and that he would be issued a Rule Violation Report ("RVR") if he did not sign

15 the agreement.  (Complaint at ¶ 5; Plaintiff's Exhibit A ("Exhibit A").)

16    Plaintiff told Defendant Limon that Inmate Duran was not compatible with Plaintiff because he

17 belonged to a different yard group.  (Complaint at ¶ 4.)  Plaintiff was told that if he did not sign a

18 double-cell agreement he would be placed on a yard-hold and moved to Unit 8, where no yard, library, or

19 other state created services were available.  (Complaint at ¶ 3.)  Plaintiff agreed to double-cell with

20 inmate Duran, but would not sign the corresponding double-cell agreement form.  (Complaint at ¶ 6.)

21    On or about September 28, 2006, Plaintiff was placed on a yard-hold.  (Plaintiff's Exhibit B at 3

22 ("Exhibit B").)  On October 4, 2006, Plaintiff was formally issued a RVR for "refusing an order to

23 double cell."  (Exhibit A.)  On October 9, 2006, Plaintiff was transferred to Unit 8.  (Exhibit B at 3.)  On

24

25    [2] When a complaint is accompanied by attached documents, the documents are part of the
complaint and may be considered in determining whether the plaintiff can prove any set of facts in
26 support of the claim.  *Roth v. Garcia Marquez*, 942 F.2d 617, 625 n.1 (9th Cir. 1991).  If the allegations
in the complaint are refuted by an attached document, the court need not accept the allegations as being
27 true.  *Id*.

28    [3] The Complaint states the incident occurred on September 25, 2006, but based on Plaintiff's
Exhibit A, it appears the incident actually occurred on September 28, 2006.

1  October 10, 2006, Plaintiff received a copy of the RVR.  (Exhibit A.)  On October 30, 2006, a hearing

2  was held on the RVR and the reviewing officer found Plaintiff not guilty of refusing to obey an order to

3  double-cell because: (1) Plaintiff was in compliance with the order at the time of the hearing; and (2)

4  Plaintiff's claims of incompatibility were not checked against all available sources of information

5  because the officers only checked against his administrative segregation file, not his central file.  (*Id.*)

6  The senior hearing officer determined that further disciplinary action against Plaintiff was unnecessary

7  and dismissed the RVR.  (*Id.*)

8  　　　From on or about September 28, 2006, to January 1, 2007, while he was on a yard-hold and

9  during his subsequent housing in Unit 8, Plaintiff was not allowed in the exercise yard.  (Complaint at ¶¶

10  6, 8, 24-25.)  He was also denied access to the law library and recreational reading books.  (Complaint at

11  ¶ 43.)  From January 1, 2007, to April 2007, Plaintiff was housed in Unit 7, where he was allowed less

12  than 5 hours in the exercise yard per week.  (Complaint at ¶ 15.)

13  ### III.  DISCUSSION

14  　　　With respect to the above facts, Plaintiff alleges numerous claims for violations of his rights

15  under the First, Fourth, Eighth, and Fourteenth Amendments, as well as several state law causes of

16  action.  Defendants move to dismiss all claims against Defendants Limon, Liles, and the CDCR, and the

17  sixth, eighth, ninth, sixteenth, and seventeenth causes of action against Defendants Hernandez and

18  Cowan.  Defendants do not move to dismiss the second, eleventh, twelfth, thirteenth, and fourteenth

19  causes of action against Defendants Hernandez and Cowan.

20  **A.    Legal Standard**

21  　　　Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon

22  which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A Rule 12(b)(6) dismissal motion 'can be

23  granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her

24  claim.'"  *Holley v. Crank*, 400 F.3d 667, 674 (9th Cir. 2005) (internal citation omitted).  "All allegations

25  of material fact are taken as true and construed in the light most favorable to the nonmoving party."

26  *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989).  The dispositive issue is "not whether a plaintiff will

27  ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Jackson*

28  *v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

1    Civil rights complaints are construed liberally.  *See Holley*, 400 F.3d at 674.  Moreover, courts

2    "have an obligation where the petitioner is *pro se*, particularly in civil rights cases, to construe the

3    pleadings liberally and to afford the petitioner the benefit of any doubt."  *Bretz v. Kelman*, 773 F.2d

4    1026, 1027 (9th Cir. 1985) (*en banc*) (internal citation omitted).  "However, a liberal interpretation of a

5    civil rights complaint may not supply essential elements of the claim that were not initially pled."  *Ivey v.*

6    *Board of Regents of University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) (internal citation omitted).

7    Furthermore, courts do not assume the truth of legal conclusions merely because they are cast in the

8    form of factual allegations.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

9    **B.      Count One**

10   Plaintiff alleges claims against Defendants Limon and Liles for cruel and unusual punishment in

11   violation of the Eighth Amendment and retaliation in violation of the First Amendment.

12   **1. Eighth Amendment Deprivation of Humane Conditions of Confinement**

13   Plaintiff alleges Defendants Limon and Liles violated his rights under the Eighth Amendment

14   when they issued him a RVR, which he claims effectively deprived him of time in the outdoor exercise

15   yard.[4]  (Complaint at ¶ 7.)  The Eight Amendment imposes a duty on prison officials to ensure that

16   inmates receive adequate food, clothing, shelter, and medical care.  *Hearns v. Terhune*, 413 F.3d 1036,

17   1042 (9th Cir. 2005).  Additionally, "[e]xercise has been determined to be one of the basic human

18   necessities protected by the Eighth Amendment," and a long-term deprivation of outdoor exercise for

19   inmates is unconstitutional.  *LeMaire v. Maass*, 12 F.3d 1444, 1457-58 (9th Cir. 1993); *see also Spain v.*

20   Procunier, 600 F.2d 189, 200 (9th Cir. 1979) (declaring unconstitutional the deprivation of outdoor

21

22       [4] In their Motion, in addition to addressing this claim, Defendants also argue that Plaintiff's
      housing assignment with Inmate Duran did not constitute a failure-to-protect under the Eighth
23    Amendment. (Motion at 6.)  However, Plaintiff does not appear to raise such a claim in his Complaint.
      While Plaintiff does express concerns regarding his fear of assault by Inmate Duran, the totality of his
24    allegations demonstrate his claim is for deprivation of humane conditions of confinement related to the
      denial of outdoor exercise.  Specifically, he alleges Defendants Limon and Liled violated his rights under
25    the Eighth Amendment when they: (1) "enforced Operational Plan #85 and effectively deprive [sic]
      Plaintiff of outdoor exercise yard from September 25, 2006 to April 2007," (Complaint at ¶ 7); (2) were
26    "deliverate [sic] indifferent when they new [sic] Plaintiff would receive no yard and his mental illness
      posed a risk in a 24 hour lockdown, like Unit 8," (Complaint at ¶ 17); and (3) "deprived Plaintiff of a
27    basic human need of exercise in an outdoor yard ....," (Complaint at ¶ 19).  In any event, to the extent
      Plaintiff sought to allege a failure-to-protect claim, this Court recommends the claim be **DISMISSED**
28    for failure to comply with Federal Rule of Civil Procedure 8. S*ee McHenry v. Renne*, 84 F.3d 1172,
      1179-80 (9th Cir. 1996).  Accordingly, this Court need not address the failure-to-protect issue.

08cv0191

1   exercise for inmates held longer than four years); *Allen v. Sakai*, 48 F.3d. 1082, 1087 (9th Cir. 1994)

2   (holding a plaintiff made an objective showing of an Eighth Amendment violation where he was only

3   allowed outside for 45 minutes per week during a six-week period).  However, "[t]he Eighth

4   Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual

5   'punishments.'" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Wilson v. Seiter*, 501 U.S. 294,

6   299-302 (1991) (rejecting a reading of the Eighth Amendment that would allow liability to be imposed

7   on prison officials solely because of the presence of objectively inhumane prison conditions).

8        A plaintiff alleging deprivation of humane conditions of confinement must not only make an

9   objective showing that the deprivation was "sufficiently serious" to form the basis for an Eighth

10  Amendment violation, but also a subjective showing that the prison official acted "with a sufficiently

11  culpable state of mind." *Wilson*, 501 U.S. at 298.  The subjective requirement, relating to a prison

12  official's state of mind, requires deliberate indifference. *Lopez v. Smith*, 203 F.3d 1122, 1133 (9th Cir.

13  2000) (en banc).  "[T]he official must be both aware of facts from which the inference could be drawn

14  that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at

15  837.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not,

16  while no cause for commendation, cannot under our cases be condemned as the infliction of

17  punishment." *Id*. at 838.

18       Finally, in order to show causation between the deliberate indifference and the Eighth

19  Amendment deprivation, a prisoner-plaintiff must demonstrate the individual defendant was in a

20  position to take steps to avert the harm, but failed to do so intentionally or with deliberate indifference.

21  *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).  This inquiry requires "a very individualized

22  approach which accounts for the duties, discretion, and means of each defendant." *Id*. at 633-34.

23       Here, assuming *arguendo* Plaintiff alleges a deprivation of humane conditions that is

24  "sufficiently serious," he fails to establish either deliberate indifference on the part of Defendants Limon

25  and Liles or a causal link between the alleged deliberate indifference and the Eighth Amendment

26  violation.  Defendants Limon and Liles issued Plaintiff a RVR when he refused an order to double-cell.

27  (Exhibit A.)  Plaintiff claims the issuance of the RVR "effectively deprive [sic] Plaintiff of outdoor

28  exercise yard from September 25, 2006 to April 2007."  (Complaint at ¶ 7.)  However, there are no

1  allegations in the Complaint which indicate that Defendants Limon and Liles, corrections officers, were

2  responsible for the alleged conditions in Unit 8 which form the basis of this claim, nor that they were

3  responsible for the decision to retain Plaintiff in Unit 8 for an extended period of time.

4       Because Defendants Limon and Liles were not responsible for the conditions in Unit 8, and the

5  alleged restrictions on outdoor exercise time in particular, they could not have "fail[ed] to alleviate" the

6  risk so as to establish either deliberate indifference. *See Farmer*, 511 U.S. at 837.  Nor was the issuance

7  of the RVR by Defendants Limon and Liles the actual and proximate cause of the alleged Eighth

8  Amendment deprivation. *See Leer*, 844 F.2d at 633-34.  Accordingly, this Court recommends

9  Defendants' motion be **GRANTED** and the Eight Amendment claim listed in Count One be

10 **DISMISSED**.

11      **2.  First Amendment Retaliation**

12      Plaintiff alleges Defendants Limon and Liles retaliated against him in violation of the First

13 Amendment when they issued him a RVR in response to his refusal to sign the double cell agreement

14 form.  (Complaint at ¶ 9.)  Within the prison context, a claim of First Amendment retaliation contains

15 five basic elements: (1) a state actor took an adverse action against the plaintiff; (2) because of; (3) the

16 plaintiff's protected conduct; and that such action (4) chilled the plaintiff's exercise of his First

17 Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes*

18 *v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  In regards to the fourth element, the Ninth Circuit

19 has indicated an allegation of "harm that is more than minimal," may suffice if a plaintiff fails to allege a

20 chilling effect. *Id*. at 567 n.11.  Finally, Prisoner retaliation claims should be evaluated in light of *Sandin*

21 *v. Conner*, 515 U.S. 472 (1995), in which the Supreme Court expressed disapproval of excessive judicial

22 involvement in day-to-day prison management.[5]  *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

23      Here, Plaintiff was issued an RVR when he refused an order to double-cell, pursuant to

24 Operational Plan #85.  (Exhibit A.)  While a prisoner's First Amendment right extends to established

25 prison grievance procedures, *see Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), Plaintiff's refusal

26

27      [5] In particular, the Supreme Court noted "the view expressed in several of our cases that federal
   courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile
28 environment," especially with regard to "the fine-tuning of the ordinary incidents of prison life, a
   common subject of prisoner claims" under section 1983. *Sandin*, 515 U.S. 482-83.

1   to comply with an order to double-cell, especially when evaluated in light of *Sandin*, is not protected

2   conduct for purposes of a First Amendment retaliation claim.  Accordingly, this Court recommends

3   Defendant's motion be **GRANTED** and the First Amendment claim listed in Count One be

4   **DISMISSED**.  Furthermore, it is appropriate to dismiss the First Amendment claim against Defendants

5   Limon and Liles **without leave to amend** because the pleading could not be cured by the allegation of

6   other facts.  *See Lopez*, 203 F.3d at 1130.

7   **C.      Counts Two and Three**

8         In Counts Two and Three, Plaintiff again alleges claims against Defendants Limon and Liles for

9   violations of his rights under the Eighth Amendment, based on the conditions of his confinement in Unit

10  8.  However, for the reasons discussed above in regards to Count One, Plaintiff fails to state a claim for

11  deprivation of humane conditions of confinement against these defendants because Plaintiff has failed to

12  demonstrate either deliberate indifference or that Defendants Limon and Liles were the actual and

13  proximate cause of the Eighth Amendment deprivation.  Accordingly, this Court recommends

14  Defendants' motion be **GRANTED** and the claims against Defendants Limon and Liles listed in Counts

15  Two and Three be **DISMISSED**.

16  **D.      Count Four**

17        Plaintiff alleges Defendants Limon and Liles violated his Fourth Amendment rights when they

18  transferred Plaintiff from his cell in Unit 6 to Unit 8.  However, this claim is without merit because the

19  transfer of an inmate within a prison does not violate his Fourth Amendment rights.  *Rizzo v. Dawson*,

20  778 F.2d 527, 530 (9th Cir. 1985).  As a result, this Court recommends Defendants' motion be

21  **GRANTED** and the Fourth Amendment listed in Count Four be **DISMISSED**.  Furthermore, it is

22  appropriate to dismiss the Fourth Amendment claims against Defendants Limon and Liles **without leave**

23  **to amend** because the pleading could not be cured by the allegation of other facts.  *See Lopez*, 203 F.3d

24  at 1130.

25  **E.      Counts Five and Seven**

26        Plaintiff alleges Defendants Limon and Liles violated his Fourteenth Amendment due process

27  rights when they issued him a RVR because it resulted in a yard-hold and subsequent transfer to Unit 8,

28  which he claims imposed an atypical and significant hardship.  In the prison context, the United States

08cv0191

1   Supreme Court has significantly limited the instances in which due process can be invoked.  Although

2   prisoners do not shed all constitutional rights at the prison gate, *Wolff v. McDonnell*, 418 U.S. 539, 555

3   (1974), "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges

4   and rights, a retraction justified by the considerations underlying our penal system," *Jones v. North*

5   *Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977) (quotations omitted).

6         "Discipline by prison officials in response to a wide range of misconduct falls within the

7   expected perimeters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. 472, 485

8   (1995).  As a result, constitutionally protected liberty interests are "limited to freedom from restraint

9   which . . . imposes atypical and significant hardships on the inmate in relation to the ordinary incidents

10   of prison life." *Id*. at 484; *See also May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (convicted

11   inmate's due process claim fails because he has no liberty interest in freedom from state action taken

12   within sentence imposed and administrative segregation falls within the terms of confinement ordinarily

13   contemplated by a sentence) (quotations omitted); *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998)

14   (finding a two and a half year term in administrative segregation did not constitute an "atypical and

15   significant" hardship).  The state does not create protectable liberty interests by way of mandatory

16   language in prison regulations.  *Sandin*, 515 U.S. at 481-84.

17         Here, Plaintiff claims he had a constitutionally protected liberty interest in not being placed on a

18   yard-hold or sent to Unit 8 because the conditions in Unit 8 constituted an atypical and significant

19   hardship.  On or about September 28, 2006, Plaintiff was placed on a yard-hold when he allegedly

20   refused an order to double-cell.  (Exhibit A.)  On October 4, 2006, Plaintiff was formally issued a RVR

21   for his refusal to obey an order to double-cell, pursuant to Operational Plan #85.  (Exhibit A.)  On

22   October 9, 2006, he was transferred to Unit 8, which is apparently a punitive housing unit.  (Exhibit B at

23   3.)  While the RVR was pending, Plaintiff was denied outdoor exercise, access to the law library, and

24   recreational reading books.  (Complaint at ¶ 43.)  On October 30, 2006, a hearing was held on the RVR.

25   (Exhibit A.)  At the hearing, the reviewing officer found Plaintiff not guilty of refusing to obey an order

26   to double-cell, dismissed the RVR, and determined that further disciplinary action against Plaintiff was

27   unnecessary.  (*Id*.)  Thus, although Plaintiff claims the issuance of the RVR denied him outdoor exercise

28   for approximately 80 days, it appears he was denied outdoor exercise for only 32 days on account of the

1   RVR, and that the decision to retain Plaintiff in Unit 8 after the hearing was unrelated to the original

2   RVR.

3        As a preliminary matter, Plaintiff's yard-hold and subsequent 21-day stay in the punitive housing

4   unit, while the RVR was pending, did not constitute an atypical and significant hardship in relation to

5   the ordinary incidents of prison life.  The punishment of incarcerated prisoners, in response to a wide

6   range of misconduct, "falls within the expected perimeters of the sentence imposed by a court of law."

7   *Sandin*, 515 U.S. at 485 (finding a prisoner's placement in disciplinary segregation for 30 days was not

8   an atypical and significant hardship).  Thus, the placement of a prisoner in a punitive housing unit or

9   ordering a yard-hold while a disciplinary report is pending does not constitute an atypical and significant

10   hardship in relation to the ordinary incidents of prison life.  *Cf. Rhodes v. Chapman*, 452 U.S. 337, 347

11   (1981) ("To the extent [prison] conditions are restrictive and even harsh, they are part of the penalty that

12   criminal offenders pay for their offenses against society.")  However, assuming *arguendo* Plaintiff had a

13   constitutionally protected liberty interest in not being placed on a yard-hold or transferred to a punitive

14   housing unit for 21 days, based on the facts alleged, the process he received was adequate.

15        The requirements of due process are "flexible and cal[l] for such procedural protections as the

16   particular situation demands.  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  Rather than rely on rigid

17   rules, the United States Supreme Court has established a framework to evaluate the sufficiency of a

18   particular process.  *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005).  The framework requires

19   consideration of three distinct factors:

20       First, the private interest that will be affected by the official action; second, the risk of an
    erroneous deprivation of such interest through the procedures used, and the probable value,
21       if any, of additional or substitute procedural safeguards; and finally, the Government's
    interest, including the function involved and the fiscal and administrative burdens that the
22       additional or substitute procedural requirement would entail.

23       *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

24        Importantly, the private interest at stake must be considered in the context of the prison system,

25   where prisoners have their liberty curtailed by definition, and thus procedural protections are necessarily

26   more limited.  *Wilkinson*, 545 U.S. at 225.  In *Wilkinson*, the Supreme Court found that indefinite

27   solitary confinement in an Ohio "supermax" facility, which resulted in an automatic denial of parole,

28   created a constitutionally protected liberty interest.  *Id.* at 224.  However, the Supreme Court found the

08cv0191

1  state's "informal, nonadversary procedures," which did not allow calling witnesses, adequately

2  safeguarded an inmate's liberty interest in not being assigned indefinitely to the supermax facility. *Id*. at

3  228-29. Allowing inmates a rebuttal opportunity "safeguard[ed] against the inmate's being mistaken for

4  another or singled out for insufficient reason." *Id*. at 226.

5        Here, Plaintiff was placed on yard hold on September 28, 2006, and subsequently transferred to

6  Unit 8 on October 9, 2006. (Exhibit A; Exhibit B at 3.) Plaintiff was provided a copy of the RVR on

7  October 10, 2006. (Exhibit A.) On October 30, 2006, a hearing was held on the RVR. (*Id*.) At the

8  hearing, the reviewing officer found Plaintiff not guilty of refusing to obey an order to double-cell,

9  dismissed the RVR, and determined that further disciplinary action against Plaintiff was unnecessary.

10  (*Id*.)

11        Given the government's significant interest in prison security, and viewing the private interest in

12  the context of the prison environment, these procedural protections adequately protect against an

13  "inmate's being mistaken for another or singled out for insufficient reason." *See Wilkinson*, 545 U.S. at

14  226. Indeed, the hearing officer here served such a purpose when he found Plaintiff not guilty of

15  refusing an order to double-cell, dismissed the RVR, and determined further disciplinary action against

16  him was unnecessary. (Exhibit A.) Thus, assuming *arguendo* Plaintiff had a constitutionally protected

17  liberty interest in not being placed on yard-hold or transferred to Unit 8 while the RVR was pending, the

18  procedural protections he received were sufficient to safeguard that interest. Accordingly, this Court

19  recommends Defendants' motion be **GRANTED** and the Fourteenth Amendment claims in Counts Five

20  and Seven be **DISMISSED**.

21  **F.**    **Count Six**

22        Plaintiff claims Defendants Limon, Liles, Cowan, and Hernandez violated his Fourteenth

23  Amendment rights under the Due Process Clause when they issued him a RVR for failure to comply

24  with Operational Plan #85, without first notifying him that he was expected to abide by Operational Plan

25  #85 and that failure to do so would result in a transfer to a harsh lock-up and 24-hour isolation unit.

26  These allegations, however, are contradicted by both his allegations in relation to Count One and by his

27  own Exhibit A. Specifically, Plaintiff alleged he "was ordered to signed [sic] a double cell agreement or

28  ///

08cv0191

1  he would be placed on Yard hold and move [sic] to Unit 8 where no yard, library or other created

2  services are available." (Complaint at ¶ 3.) Exhibit A, the RVR itself, states in pertinent part:

3      On Thursday, September 28, 2006 . . .I informed Inmate PARRA . . . that he had been
       assigned to Double Cell status by I.C.C. I informed Inmate PARRA of Operational Plan #85,

4      Single/Double Cell Procedures, which states, in part, "Inmates are not entitled to single cell
       assignment, housing location of choice, or cellmate of choice. An inmate is expected to

5      share occupancy with another inmate in a cell setting...unless staff determines that an
       inmate's case factors or security concerns warrant single cell assignment. I informed Inmate

6      PARRA that he would have to get a cellmate due to the overcrowding situation in ASU. I
       also informed Inmate PARRA that his refusal to get a cellmate would result in him being

7      issued a CDC-115 for "Refusing to Obey Orders to Double-Cell." I further advised Inmate
       PARRA that a "Yard Hold" would be in effect, due to this pending CDC-115. Inmate

8      PARRA indicated he didn't want a cell-mate, and refused to double cell, stating, "NO."
       Inmate PARRA is aware of this report.

9  (Exhibit A.)

10      When a complaint is accompanied by attached documents, the documents are part of the

11  complaint and may be considered in determining whether the plaintiff can prove any set of facts in

12  support of the claim. *Roth v. Garcia Marquez*, 942 F.2d 617, 625 n.1 (9th Cir. 1991). If the allegations

13  in the complaint are refuted by an attached document, the court need not accept the allegations as being

14  true. *Id*. Because the allegations in relation to Count One, as well as the information contained in

15  Exhibit A, directly contradict Plaintiff's claim that he was not provided notice of the need to comply

16  with the order to double-cell, this Court does not accept Plaintiff's allegation that he was not provided

17  notice as true. *See id*. Accordingly, this Court recommends Defendants' motion be **GRANTED** and

18  Plaintiff's claim in Count Six be **DISMISSED without leave to amend** because the pleading could not

19  be cured by the allegation of other facts. *See Lopez*, 203 F.3d at 1130..

20  **G.      Count Eight**

21      Plaintiff claims Defendants Limon, Liles, Cowan, and Hernandez deprived him of his state-

22  created liberty interest in being classified as having "safety concerns" when they assigned him to double

23  cell with a general population inmate. However, prisoners do not have a constitutionally recognized

24  liberty interest in a particular security classification. *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th

25  Cir. 1987); *see also Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Accordingly, this Court

26  recommends Defendants' motion be **GRANTED** and Plaintiff's Fourteenth Amendment claims in

27  Count Eight be **DISMISSED without leave to amend** because the pleading could not be cured by the

28  allegation of other facts. *See Lopez*, 203 F.3d at 1130.

08cv0191

**H.    State Law Claims**

Plaintiff alleges numerous state law causes of action against Defendants Limon, Liles, Cowan, and Hernandez.  Plaintiff also seeks to hold Defendant CDCR liable for the actions of the individual defendants on the basis of a state law cause of action for vicarious liability.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating *federal* rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979) (emphasis added).  A claim for violation of state law is not cognizable under section 1983. *See Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990); accord *Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995) ("We take this opportunity to emphasize that violations of state laws, state-agency regulations, and . . . state-court orders, do not by themselves state a claim under 42 U.S.C. § 1983.").  Thus, Plaintiff's state law claims are not cognizable under section 1983, and are only before this Court pendant to Plaintiff's claims based on federal law.

**1. Defendants Limon and Liles**

Here, as discussed above, Plaintiff's federal claims against Defendants Limon and Liles must be dismissed from the complaint because he fails to state a cognizable claim for relief under § 1983.  When federal law claims are removed from a lawsuit before trial and only state law claims remain, the balance of factors to be considered under the pendant jurisdiction doctrine will usually point toward declining to exercise jurisdiction over the remaining state law claims, and to dismiss the claims without prejudice. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("if the federal claims are dismissed before trial . . . the state claims should be dismissed as well").  In view of this Court's determination that Plaintiff fails to state a cognizable claim for relief under § 1983 against Defendants Limon and Liles, this Court refrains from determining the propriety of his state law claims against these defendants, sued in their personal capacities, until such time as he files a viable federal claim.  Accordingly, it is recommended the Court decline to exercise jurisdiction over Plaintiff's state law claims against Defendants Limon and Liles and that these claims be **DISMISSED without prejudice**. *See* 28 U.S.C. 1367(c)(3).

///

///

08cv0191

1        **2.  Count Sixteen - Claims against Defendants Cowan and Hernandez**

2        Plaintiff alleges a state law cause of action against Defendants Cowan and Hernandez for

3   enforcing Operational Plan #85 without first notifying him that he was expected to abide by Operational

4   Plan #85 and that failure to do so would result in punishment.[6]  However, for the reasons stated above in

5   relation to Count Six, this Court recommends Defendants' motion be **GRANTED** and Plaintiff's claims

6   in Count Sixteen be **DISMISSED without leave to amend** because the pleading could not be cured by

7   the allegation of other facts.  *See Lopez*, 203 F.3d at 1130..

8        **3.  Count Seventeen - Claims against Defendants Cowan and Hernandez**

9        Plaintiff claims Defendants Cowan and Hernandez are liable for their alleged failure to comply

10  with California Government Code § 11340.5(a) prior to enforcing Operational Plan #85.  Plaintiff,

11  however, fails to state a cognizable claim for relief against Defendants Cowan and Hernandez because

12  California Government Code § 11340.5(a) imposes a duty on a "state agency," not on individuals.[7]  *See*

13  Cal. Govt. Code § 11340.5(a); *cf. Donaldson v. Department of Real Estate of State of Cal.*, 134 Cal.

14  App. 4th 948, 966-67 (Cal. Ct. App. 2005) (discussing whether the Department of Real Estate could

15  validly enforce certain regulations in light of § 11340.5(a)).  Accordingly, this Court recommends

16  Defendants' motion be **GRANTED** and Plaintiff's claims in Count Seventeen be **DISMISSED without**

17  **leave to amend** because the pleading could not be cured by the allegation of other facts.  *See Lopez*, 203

18  F.3d at 1130.

19       **4.  Defendant CDCR**

20       Plaintiff alleges claims for vicarious liability under California Government Code § 815.2 against

21  Defendant CDCR, a state agency, based upon the alleged tortious acts of the individual defendants.

22

23       [6] Because this Court recommends the state law causes of action against Defendants Limon and
    Liles be dismissed without prejudice because Plaintiff has failed to state a viable federal claim against
24  these defendants, the Court does not discuss these defendants in relation to Counts Sixteen and
    Seventeen.
25
         [7] California Government Code § 11340.5(a) states the following:
26
         No state agency shall issue, utilize, enforce, or attempt to enforce any guideline, criterion,
27       bulletin, manual, instruction, order, standard of general application, or other rule, which is
         a regulation as defined in Section 11342.600, unless the guideline, criterion, bulletin, manual,
28       instruction, order, standard of general application, or other rule has been adopted as a
         regulation and filed with the Secretary of State pursuant to this chapter.

1  Plaintiff does not allege an independent basis of federal jurisdiction against the CDCR, but instead relies

2  upon his federal claims against the individual defendants to provide pendant jurisdiction.  It is well

3  established that under the Eleventh Amendment, state agencies are immune from private damage actions

4  or suits for injunctive relief brought in federal court, except to the extent a State voluntarily waives its

5  immunity or Congress authorizes such a suit.  *See, e.g., College Sav. Bank v. Florida Prepaid*

6  *Postsecondary Educ. Expense Bd.* 527 U.S. 666, 670 (1999).  Here, the California law in question does

7  not contain a provision authorizing suit in federal court, *see* California Government Code § 815.2, nor

8  was § 1983 intended to abrogate a State's Eleventh Amendment immunity, *Kentucky v. Graham*, 473

9  U.S. 159, 169 n.17 (1985).  Accordingly, this Court recommends the state law claims against Defendant

10  CDCR be **DISMISSED sua sponte**.  Furthermore, it is appropriate to dismiss the state law claims

11  against Defendant CDCR **without leave to amend** because the pleading could not be cured by the

12  allegation of other facts.  *See Lopez*, 203 F.3d at 1130.

### IV.  CONCLUSION

14  Having reviewed the matter, this Court  recommends:

15  1.  Defendants' Motion to Dismiss be **GRANTED**.

16  2.  Plaintiff's Eighth Amendment claims listed in Counts One through Three, in relation to

17  Defendants Limon and Liles, be **DISMISSED**.

18  3.  Plaintiff's First Amendment retaliation claim in Count One be **DISMISSED without leave to**

19  **amend**.

20  4.  Plaintiff's claims in Count Four be **DISMISSED without leave to amend**.

21  5.  Plaintiff's claims in Counts Five and Seven be **DISMISSED**.

22  6.  Plaintiff's claims in Counts Six and Eight be **DISMISSED without leave to amend**.

23  7.  The Court decline to exercise jurisdiction over Plaintiff's state law claims against Defendants

24  Limon and Liles and that Counts Nine through Sixteen, and Eighteen, in relation to Defendants Limon

25  and Liles, be **DISMISSED without prejudice**.

26  8.  Plaintiff's claims in Counts Sixteen and Seventeen, in relation to Defendants Cowan and

27  Hernandez, be **DISMISSED without leave to amend**.

28  ///

08cv0191

9. All claims against Defendant CDCR be **DISMISSED sua sponte without leave to amend**.

10.  Defendant CDCR's Motion to Dismiss be **DENIED as moot**.

11.  Plaintiff be given **thirty days** from the date the final order regarding Defendants' Motion is entered to file and serve a First Amended Complaint.  Leave to amend should only be granted as to the previously brought claims for the purpose of curing pleading deficiencies.  No new claims should be alleged.  Plaintiff should be warned that the First Amended Complaint will be his final pleading.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636 (b)(1).

IT IS ORDERED that no later than **August 25, 2008**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties **within 10 days** of being served with the objections.

**IT IS SO ORDERED**.

DATED:  July 22, 2008

_____
**CATHY ANN BENCIVENGO**
United States Magistrate Judge

15

08cv0191