1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  ROCHELLE C. EAST
   Senior Assistant Attorney General
4  MICHELLE DES JARDINS
   Supervising Deputy Attorney General
5  SYLVIE P. SNYDER, State Bar No. 171187
   Deputy Attorney General
6   110 West A Street, Suite 1100
    San Diego, CA 92101
7   P.O. Box 85266
    San Diego, CA 92186-5266
8   Telephone: (619) 645-2299
    Fax: (619) 645-2581
9   Email: Sylvie.Snyder@doj.ca.gov

10 Attorneys for Defendants P. Cowan, R. Hernandez, W.
   Liles and R. Limon

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **VICTOR PARRA, Jr.,**<br><br>                    Plaintiff,<br><br>     v.<br><br>**R. HERNANDEZ, et al.,**<br><br>                    Defendants. | 08CV0191 H CAB<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date:      September 15, 2008<br>Time:      N/A<br>Courtroom: E<br>Judge:     The Honorable Cathy Ann Bencivengo |

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DAVID S. CHANEY
Chief Assistant Attorney General
3 | ROCHELLE C. EAST
Senior Assistant Attorney General
4 | MICHELLE DES JARDINS
Supervising Deputy Attorney General
5 | SYLVIE P. SNYDER, State Bar No. 171187
Deputy Attorney General
6 |   110 West A Street, Suite 1100
  San Diego, CA 92101
7 |   P.O. Box 85266
  San Diego, CA 92186-5266
8 |   Telephone:  (619) 645-2299
  Fax:  (619) 645-2581
9 |   Email:  Sylvie.Snyder@doj.ca.gov

10 | Attorneys for Defendants P. Cowan, R. Hernandez, W. Liles and R. Limon

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **VICTOR PARRA, Jr.,** | 08CV0191 H CAB |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |
| v. | |
| **R. HERNANDEZ, et al.,** | Date: September 15, 2008 |
| Defendants. | Time: N/A |
| | Courtroom: E |
| | Judge: The Honorable Cathy Ann Bencivengo |

**I**

**RELIEF REQUESTED BY PLAINTIFF AND SHORT RESPONSE**

In his Motion for a Preliminary Injunction, Plaintiff requests four categories of relief as follows:

**A.  Relief Related to Operational Plan No. 85:**

Plaintiff requests that the Court declare Operational Plan No. 85 unenforceable because it is vague and overbroad, and that the Court order Defendants to stop enforcing Operational Plan No. 85. (Motion for Preliminary Injunction p. 7 ¶ 32(1) & (2).)

Defs.' Opp'n to Pl.'s Mot. for a Prelim. Inj.                                                                08CV0191 H CAB

1

1  **Short Response:**   This Plan simply sets forth policies and procedures for single- and double-
2  celling of inmates.  It is not vague or overbroad such that it should be declared unenforceable.
3  **B.   Relief Relating to All Inmates:**
4  Plaintiff requests that the Court order Defendants to stop denying outdoor yard time at Unit 8,
5  and to stop confiscating legal documents as a way to coerce inmates to double-cell. (*Id.* p. 7 ¶ 32(3)
6  & (4).)
7  **Short Response:**   Plaintiff does not have standing to vindicate the rights of others.
8  **C.   Relief Specific to Plaintiff:**
9  Plaintiff requests that the Court order:  1)  Plaintiff be allowed at least ten hours of yard in no
10  less than three days a week; and, 2) that Plaintiff's legal documents not be confiscated and that he
11  not be denied law library time.  (*Id.* p. 7 ¶ 32(5) & (6).)
12  **Short Response:**    Plaintiff can be transferred from Unit 8 to Unit 7, where he would receive
13  adequate yard time, if he would accept double-cell bed space there.  Otherwise, if Plaintiff is ordered
14  to be provided ten hours of yard in no less than three days a week, he would have to be single-celled
15  in Unit 7, resulting in one less inmate who could be given yard time.  Thus, ordering that Plaintiff
16  be given at least ten hours of yard in no less than three days a week would impermissibly interfere
17  with the complex and intractable problems of prison administration, and with providing resources
18  to inmates in a fair and reasonable manner.  Regarding legal documents and law library time,
19  Plaintiff does not claim his legal materials are being confiscated or that he is being denied access
20  to the law library.  Rather, Plaintiff merely speculates these might occur.
21  **D.   Other Relief:**
22  Plaintiff requested that the Court order any relief the Court deems just, even monetary fines.
23  (*Id.* p. 7 ¶ 32(7).)
24  **Response:**    The Court should not order any other relief.
25  **II**
26  **STANDARD FOR PRELIMINARY INJUNCTION**
27  An injunction is an equitable remedy.  The basis for injunctive relief in federal court,
28  whether preliminary or permanent, in the federal courts is irreparable injury and inadequacy of

Defs.' Opp'n to Pl.'s Mot. for a Prelim. Inj.                                                                08CV0191 H CAB

2

legal remedies. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982); *Stanley v. University of So. Calif.*, 13 F.3d 1313, 1320 (9th Cir. 1994).

To obtain a preliminary injunction the requesting party must show: "(1) a likelihood of success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and the balance of hardships tipping in [the requesting party's] favor." *Warsoldier v Woodford*, 418 F. 3d 989, 993-94 (9th Cir. 2005). "These two alternatives represent extremes of a single continuum, rather than two separate tests. Thus, the greater the relative hardship to [the requesting party], the less probability of success must be shown." *Id*. at 994 (internal quotations omitted). "[I]f the plaintiff shows no chance of success on the merits ... the injunction should not issue, because as an irreducible minimum, the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Department of Parks & Rec. for State of Calif. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006) (internal quotes and brackets omitted). "Under any formulation of the test, the moving party must demonstrate a significant threat of irreparable injury." *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987). The requesting party is required to carry its burden of persuasion by a clear showing. *See City of Angoon v. Marsh*, 749 F.2d 1413, 1415 (9th Cir. 1984).

"[A] preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v ULSI Systems Technology, Inc.,* 995 F.2d 1566, 1568 (Fed. Cir. 1993). A party seeking an injunction is required to show injury in fact (a concrete harm that is actual or imminent), causation, and redressibility. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999). Establishing a risk of irreparable harm in the indefinite future is not enough. The harm must be shown to be imminent. *Midgett v. Tri-County Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 850-51 (9th Cir. 2001).

Injunctive relief may be denied if it would require constant supervision by the court. *Natural Resources Defense Council, Inc. v. U.S.E.P.A.*, 966 F.2d 1292, 1300 (9th Cir. 1992).

## III

## OPERATIONAL PLAN NO. 85 SHOULD NOT BE DECLARED UNENFORCEABLE

Plaintiff requests that the Court declare Operational Plan No. 85 (which Plaintiff attached as Exhibit C to his Motion for Preliminary Injunction) unenforceable because it is vague and overbroad, and that the Court order Defendants to stop enforcing Operational Plan No. 85. (Motion for Preliminary Injunction p. 7 ¶ 32(1) & (2).)

Where a party seeks to enjoin a government agency, "his case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." *Rizzo v. Goode*, 423 U.S. 362, 378-79 (1976) (citations and internal quotation marks omitted). "'[J]udicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995).

Plaintiff argues that Operational Plan No. 85 should be declared unenforceable for the following reasons:

1)  it fails to give notice to inmates as to what conduct is required thereby violating California Code of Regulations Title 15, section 3002 et seq.;

2)  it fails to give notice to correctional officers as to what specific act is required in order to be considered a violation;

3)  it violates California Code of Regulations Title 15, section 3322(c) when there is a deprivation of yard for more than ten days as a disciplinary measure without a pre- or post-deprivation hearing pursuant to the practice and use of a yard hold as coercion to achieve enforcement of Operational Plan No. 85, and violates California Code of Regulations Title 15, section 3343(h) when prisoners are transferred to Unit 8, and subjected to 24 hour isolation and to perpetual deprivation of all outdoor exercise opportunities;

4)  it violates the right to be free from assault by other prisoners under 18 U.S.C. section 4042(a), California Civil Code section 43, and the Constitutional rights created in *Farmer v. Brennan*, 511 U.S. 825, 833 (1994);

Defs.' Opp'n to Pl.'s Mot. for a Prelim. Inj.                                                                 08CV0191 H CAB

4

5) it has resulted in loss of outdoor exercise yard to numerous inmates;

6) it has resulted in serious assaults with weapons, including while inmates were hand-cuffed;

7) it has resulted in confiscation of inmates' legal documents and text books; and,

8) it has resulted in deprivation of law library opportunities as coercion in order to effect the purpose of Operational Plan No. 85.

(Motion for Preliminary Injunction p. 2.)

Operational Plan No. 85 should not be declared vague and overbroad, and therefore, unenforceable because this Plan simply sets forth policies and procedures for single- and double-celling of inmates already set forth in the California Code of Regulations by specifying responsible staff and outlining responsibilities by staff member. (Operational Plan No. 85, attached as Exhibit C to Plaintiff's Motion for Preliminary Injunction.) Thus, it is not an ordinance or regulation to be overturned.

Under California Code of Regulations Title 15, section 3269, inmates are advised that if they are determined suitable for double-cell housing, they are not entitled to single-cell assignments or cell mates of their choice, and that refusal of a cell mate assignment made on the basis of available documentation and individual case factors subjects the inmate to disciplinary action. This code section provides as follows:

> Inmates shall accept Inmate Housing Assignments (IHAs) as directed by staff. It is the expectation that all inmates double cell, whether being housed in a Reception Center, General Population (GP), an Administrative Segregation Unit (ASU), a Security Housing Unit (SHU), or speciality housing unit. If staff determines an inmate is suitable for double cell living, based on the criteria as set forth in this section, the inmate shall accept the housing assignment or be subject to disciplinary action for refusing. IHAs shall be made on the basis of available documentation and individual case factors. Inmates are not entitled to single cell assignment, housing location or choice, or to a cellmate of their choice.

This portion of the code section is repeated in Operational Plan No. 85 on the second page, and the code section is referenced on the first page. (Operational Plan No. 85 pp. 1-2, attached as Exhibit C to Plaintiff's Motion for Preliminary Injunction.)

Subsection (g) of California Code of Regulations Title 15 § 3269, advises inmates who refuse to be housed as determined, that they 1) shall be subject to disciplinary process, "with the

Defs.' Opp'n to Pl.'s Mot. for a Prelim. Inj.                                   08CV0191 H CAB

5

potential to be housed in alternative and more restrictive housing"; 2) will receive a Rules Violation Report for "Refusing to Accept Assigned Housing," for the "Specific Act of Willfully Resisting, Delaying, or Obstructing any Peace Officer in the performance of Duty"; and, 3) that subsequent refusals "will result in the issuance of additional disciplinary reports and consideration for placement in more restrictive housing such as an ASU or SHU." Thus, inmates are advised of the consequences of refusing a cellmate. Plaintiff has been determined suitable for double-cell living. (Exhibit E to Plaintiff's Motion for Preliminary Injunction.) Therefore, under California Code of Regulations Title 15, § 3269, Plaintiff is required to accept a double-cell assignment, or to be subject to disciplinary action for refusing.

"[A] party challenging the facial validity of an ordinance on vagueness grounds outside the domain of the First Amendment must demonstrate that the enactment is impermissibly vague in all of its applications." *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 972 (9th Cir. 2003) (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982) (internal quotation marks omitted). "[A]n ordinance must (1) define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited; and (2) establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner." *Nunez v. City of San Diego*, 114 F.3d 935, 940 (9th Cir. 1997) (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).

Here, an ordinary inmate can understand that if he is determined to be suitable for double-cell housing, he must accept a double-cell assignment or be subjected to disciplinary action.

With respect to Plaintiff's complaints about the specific discipline, there is nothing in Operational Plan No. 85 outlining what discipline is appropriate. As noted in the "Purposes and Objectives" section, the Plan focuses, not on the inmate, but on staff by defining responsible staff and outlining their responsibilities. (Operational Plan No. 85 pp. 1-9, attached as Exhibit C to Plaintiff's Motion for Preliminary Injunction.) Regarding Plaintiff's complaints about the specific discipline for refusing a cell mate, the complaints are only appropriate as applied to him because these are the only issues he has standing to raise. These issues are addressed below in

1  sections V and VI. The standing issue is addressed in section IV below.

2      For the reasons set forth above, there is no basis for declaring Operational Plan No. 85
3  vague and overbroad and, therefore, unenforceable, or for ordering Defendants to stop enforcing
4  Operational Plan No. 85.

## IV

### PLAINTIFF HAS NO STANDING TO VINDICATE THE RIGHTS OF OTHERS

7      Separate from his own request for yard time and that his documents not be confiscated,
8  Plaintiff requests that the Court order Defendants generally to stop denying outdoor yard time at
9  Unit 8, and to stop confiscating legal documents as a way to coerce inmates to double cell.
10  (Motion for Preliminary Injunction p. 7 ¶ 32(3)-(6).)

11      Apparently, Plaintiff is attempting to maintain a class action on behalf of other inmates at
12  R. J. Donovan Correctional Facility. Ordinarily, a plaintiff does not have standing to assert
13  deprivation of others' constitutional rights. *Powers v. Ohio*, 499 U.S. 400, 410 (1991). A non-
14  attorney may appear *pro se* on his own behalf, but he has no authority to appear as an attorney
15  for others. *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987).
16  Furthermore, as a *pro se* litigant Plaintiff cannot fairly and adequately protect the interests of the
17  class as required by Federal Rules of Civil Procedure 23(a)(4). "Every court that has considered
18  the issue has held that a prisoner proceeding *pro se* is inadequate to represent the interests of his
19  fellow inmates in a class action." *Caputo v. Fauver*, 800 F. Supp. 168, 170 (D.N.J. 1992), *aff'd*,
20  995 F.2d 216 (3rd Cir. 1993); *see Russell v. U.S.*, 308 F.2d 78, 79 (9th Cir. 1962) ("a litigant
21  appearing in propria persona has no authority to represent anyone other than himself"); *Griffin v.*
22  *Smith,* 493 F. Supp. 129, 131-32 (W.D.N.Y.1980) (denying class certification for pro se
23  prisoner); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir.1975) ("Ability to protect the
24  interests of the class depends in part on the quality of counsel ... [I]t is plain error to permit this
25  imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class
26  action.").

27      Plaintiff's requests for injunctive relief on behalf of other inmates must be denied.
28

Defs.' Opp'n to Pl.'s Mot. for a Prelim. Inj.                                                                                 08CV0191 H CAB

**V**

**PLAINTIFF'S REQUEST FOR YARD TIME**

Plaintiff alleges he has been housed in Unit 8 since June 30, 2008, and has had no yard since that time. (Mot. for Prelim. Inj. p. 3 ¶ 9; Mem. of P. & A. in Support of Mot. for Prelim. Inj. pp. 1, 5.) Plaintiff requests that the Court order Plaintiff be allowed at least ten hours of yard in no less than three days a week. (Mot. for Prelim. Inj. p. 7 ¶ 32(5).)

Where a party seeks to enjoin a government agency, "his case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." *Rizzo v. Goode*, 423 U.S. 362, 378-79 (1976) (citations and internal quotation marks omitted). "'[J]udicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995).

Plaintiff was sent to Administrative Segregation because he assaulted his father, who was his cell mate at that time. (Decl. of Captain B. Morris p. 2 ¶ 3.) Prior to his transfer to Unit 8 on June 30, 2008, Plaintiff was housed in Unit 7 where, barring unusual circumstances, inmates receive at least ten hours of yard exercise in no less than three days a week. (*Id*. p. 2 ¶ 4.) As is explained below, Plaintiff could be transferred back to Unit 7 if he accepted bed space there.

R.J. Donovan Correctional Facility has two Administrative Segregation units that have yard facilities, Units 6 and 7. (*Id*. p. 2 ¶ 5.) Each of these units has 100 cells. (*Id*.) Unit 6 has 63 beds reserved for certain designated-level mental health inmates, with the remainder of beds used mostly for inmates who are designated single-cell status due to certain specific case factors. (*Id*.) Unit 7 is the primary unit for housing double-cell status inmates[1] assigned to Administrative Segregation. (*Id*.) Due to overcrowding, Units 6 and 7 do not have enough bed space for all the inmates who need to be housed in Administrative Segregation. (*Id*. p. 2 ¶ 7.) Because of the overcrowding and the need for Administrative Segregation bed space, Unit 8 is

---

1.   An inmate's cell status is determined by a committee who reviews several case factors in determining whether the inmate is suitable for double-cell housing. (Decl. of B. Morris p. 2 ¶ 6.)

Defs.' Opp'n to Pl.'s Mot. for a Prelim. Inj.                                                                08CV0191 H CAB

8

currently used as temporary overflow housing for inmates assigned to Administrative Segregation. (*Id*. p. 2 ¶ 8.) Unit 8 currently has no yard facilities, and no staffing for yard. (*Id*. p. 2 ¶ 9.) The institution, however, is in the process of building "walk-alone" yards to service Administrative Segregation Units, including Unit 8.[2/] (*Id*. p. 2 ¶ 10.)

The greater the number of inmates who are double-celled in Unit 7 results in the greater number of inmates who get yard time. (*Id*. p. 2 ¶ 12.) For every Unit 7 cell with only one inmate, there is one inmate who must be housed in Unit 8, and is, therefore, not able to be provided yard.[3/] (*Id*. p. 3 ¶ 13.) Because of this, double-cell status inmates who do not refuse to double-cell are housed in Unit 7. (*Id*. p. 3 ¶ 15.) In order to maximize the number of inmates who have yard time, if a double-cell status inmate refuses to double cell, then that inmate is moved to Unit 8 and two inmates from Unit 8 who do not refuse to double-cell are moved into Unit 7. (*Id*. p. 3 ¶ 16.) Plaintiff is assigned double-cell status. (Exhibit E to Pl.'s Mot. for Prelim. Inj.)

In order to move Unit 8 inmates back to Unit 7 as quickly as possible, the Facility Captain takes steps to allow inmates to interact to find a suitable cell mate because the biggest impediment to inmates finding a cell partner is not knowing each other.[4/] (Decl. of Captain B. Morris p. 3 ¶ 17.) To this end, five to seven inmates, who from their files are potentially housing compatible, are placed in holding cells located in the Unit 8 day room area for one to four hours to allow them to see and speak with each other and get to know each other, and find an inmate

---

2. Administrative Segregation inmates must either be sent to yard alone, or can only be sent with a very limited and carefully selected number of inmates. (Decl. of B. Morris p. 2 ¶ 11.)

3. Although Unit 7 is budgeted for 150 inmates to be housed in its 100 cells, it is used to house up to 200 inmates in order to maximize the number of inmates who have yard time. (*Id*. p. 3 ¶ 14.)

4. Due to safety concerns, Administrative Segregation inmates must be handcuffed and escorted whenever they leave their cell, and they are not allowed to congregate in the day room or other areas as they might if they were a general population inmate. This makes it difficult for Administrative Segregation inmates to have opportunities to interact. (*Id*. p. 3 ¶ 18.)

with whom to cell. (*Id*. p. 3 ¶ 19.) Once the inmates agree to double-cell, it generally takes about one week for a cell in Unit 7 to become available for the transfer. (*Id*. p. 3 ¶ 20.) The Facility Captain provides this type of interaction one or two times a week or more depending on the need. (*Id*. p. 3 ¶ 21.)

On August 26, 2008, and most likely on several other occasions prior to this,[5] Plaintiff was part of a group of approximately seven inmate who were placed in the holding cells for approximately three hours to be allowed to interact. (*Id*. p. 3 ¶ 22.) Plaintiff did not attempt to interact with the other inmates, and did not advise staff he found someone with whom to double-cell. (*Id*. p. 4 ¶ 24.) When Captain Morris asked Plaintiff why he would not double-call, Plaintiff said it was because cell mates stole his property, specifically mentioning his address book, and because he felt nothing was done about it. (*Id*. p. 4 ¶ 25.)

Inmates who do not find their own cell mates, are periodically[6] matched up by the institution with compatible inmates, and are ordered to accept that inmate as a cell mate. (*Id*. p. 4 ¶ 26.) When an inmate refuses to double-cell, the institution does not force the inmate into the cell with the other inmate; at most, the inmate is brought to the cell door, and ordered to enter, but upon refusal, he is not forcefully pushed into the cell. (*Id*. p. 4 ¶ 28.) Rather, the inmate is issued a Rules Violation Report for refusing an order to double-cell. (*Id*.) In taking the steps of

---

5.  The institution does not keep lists of inmates who are brought to the holding cell to interact with other inmates. Prior to August 26, 2008, Captain Morris, who oversees this program, did not specifically know Parra by name. When Captain Morris saw Parra's name on August 26, 2008, as one of the inmates in the holding cell group, he recognized it from his interaction with the prison's Litigation Coordinator relating to providing information in connection with defending this lawsuit. At that point, Captain Morris took note of inmate Parra. (Decl. of B. Morris p. 4 ¶ 23.) It is very likely inmate Parra was in other holding cell groups prior to August 26, 2008, because Captain Morris routinely places inmates in Unit 8 who are similar to Plaintiff into these groups in order to facilitate moving inmates out of Unit 8 to Unit 7. (*Id*.)

6.  If an inmate refuses the cell mate, he is issued a Rules Violation Report. Generally, the adjudication of a Rules Violation Report takes about 30 days. A new Rules Violation Report for refusing a cell mate can only be issued when no Rules Violation Reports for this offense are pending. Thus, this matching can only be done about every 30 days. (*Id*. p. 4 ¶ 27.)

Defs.' Opp'n to Pl.'s Mot. for a Prelim. Inj.                                                                08CV0191 H CAB

10

letting inmates get to know each other and if that fails unilaterally matching them up, the institution does the best it can to provide yard for the greatest number of inmates within the confines of its prison population and limited resources.  (*Id*. p. 4 ¶ 29.)

At least on August 18, 2008, Plaintiff was matched up by the institution with an inmate who appeared compatible, and was ordered to double-cell with that inmate.  (*Id*. p. 5 ¶ 30.)  Plaintiff refused.  (*Id*.)   If Plaintiff agreed to double-cell with an inmate, he could be moved to Unit 7 most likely within one week.  (*Id*. p. 5 ¶ 31.)  Since June 20, 2008, or shortly thereafter, Plaintiff has refused to double-cell.  (*Id*. p. 5 ¶ 32.)

This Court should not order that Plaintiff be transferred to Unit 7 (which is the only option for him to get ten hours of yard in no less than three days a week) because this would mean Plaintiff would be placed by himself in a double-cell, thus, depriving another inmate of yard time.  This would unreasonably inhibit the institution's ability to provide yard for as many inmates as possible in the fairest and most reasonable way possible.

In addition to the burden to the institution's operations, Plaintiff has not shown: "(1) a likelihood of success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and the balance of hardships tipping in [the requesting party's] favor." *Warsoldier v Woodford*, 418 F.3d 989, 993-94 (9th Cir. 2005).  Plaintiff's only "evidence" he will succeed on the merits is that Defendants did not move to dismiss all of Plaintiff's claim against Defendants Cowan and Hernandez. (Plaintiff's Motion for Preliminary Injunction and related documents.)  Defendants, however, must accept allegations in Plaintiff's Complaint as true.  Thus, a motion to dismiss was not possible.  Defendants, however, at summary judgment will be able to introduce the evidence set forth above and will prevail.  Regarding the hardship, it does not tip in Plaintiff's favor.  Rather, the hardship tips in favor of the inmate who will be denied yard if the Unit 7 cell does not house two inmates.

Plaintiff's request that the Court order Plaintiff be allowed at least ten hours of yard in no less than three days a week should be denied.

Defs.' Opp'n to Pl.'s Mot. for a Prelim. Inj.                                                                                                  08CV0191 H CAB

11

# VI

**PLAINTIFF'S REQUEST THAT HIS LEGAL DOCUMENTS NOT BE CONFISCATED AND THAT HE NOT BE DENIED LAW LIBRARY TIME**

In his Motion for Preliminary Injunction, Plaintiff never claims his legal materials are currently confiscated or that he has been denied access to the law library. Rather, Plaintiff merely speculates that his legal documents might be confiscated and that he might be denied law library time. The whole of Plaintiff's claims regarding these issues are as follows:

1. Plaintiff "has been threatened with confiscation of his legal documents as is the new practice." (Motion for Preliminary Injunction p. 3 ¶ 3.)

2. "And since 2007 confiscation of all property, legal documents including, (sic) is effected as further coercion violating CCR section 3331(i) and (j) (duty to obstruct with court access)." (*Id*. p. 4 ¶ 15.)

3. "Further, deprivation of his legal documents or law library opportunities as coercion will interfere with protected constitutional activities, access to the courts and right to protection from harm." (*Id*. p. 6 ¶ 28.)

4. "... the likel[i]hood of ... denial of law library or legal documents outweigh[s] defendants['] interest in pres[s]uring inmates to double cell." (*Id*. p. 6 ¶ 29.)

5. "Plaintiff is subject to the same potential harm ... coercion of law library denials like inmate Wiseman[7/] ..." (Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction p. 5:18-20.)

6. "So far inmates have been ...denied law library [like] Wiseman[8/] and ..." (*Id*. p. 7:21-22.)

To obtain an injunction, "[t]he plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official

---

7. Defendants' object to the reference to Wiseman having been denied law library time as lacking foundation.

8. Defendants' object to the reference to Wiseman having been denied law library time as lacking foundation.

1 conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or

2 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 92, 101-02 (1983).  Speculative losses

3 are insufficient.  *Goldie's Bookstore, Inc. v. Sup. Ct.*, 739 F.2d 466, 472 (9th Cir. 1984).

4       Here, Plaintiff is merely speculating that his legal materials might be confiscated or he

5 might be denied time in the law library.  Plaintiff has simply not met his burden of showing he

6 has sustained or is immediately in danger of sustaining this injury especially considering

7 Plaintiff's claim that he has been rehoused in Unit 8 since June 30, 2008 (Plaintiff's Mem. of P.

8 &A. p. 1:26-27), and that he was able to file his Motion for Preliminary Injunction on August 3,

9 2008.

10 **CONCLUSION**

11       Defendants respectfully request that the Court deny Plaintiff's request for a preliminary

12 injunction.

13       Dated:  September 2, 2008

14               Respectfully submitted,

15               EDMUND G. BROWN JR.
              Attorney General of the State of California

16               DAVID S. CHANEY
              Chief Assistant Attorney General

17
              ROCHELLE C. EAST

18               Senior Assistant Attorney General

              MICHELLE DES JARDINS
19               Supervising Deputy Attorney General

20
              s/ Sylvie P. Snyder

21

22               SYLVIE P. SNYDER
              Deputy Attorney General

23               Attorneys for Defendants

24 70134126.wpd
   SD2008700335
25

26

27

28

| | |
|---|---|
| 1 | **TABLE OF CONTENTS** |

| | Page |
|---|---|
| I RELIEF REQUESTED BY PLAINTIFF AND SHORT RESPONSE | 1 |
|     A. Relief Related to Operational Plan No. 85 | 1 |
|     C. Relief Specific to Plaintiff | 2 |
|     D. Other Relief | 2 |
| II STANDARD FOR PRELIMINARY INJUNCTION | 2 |
| III OPERATIONAL PLAN NO. 85 SHOULD NOT BE DECLARED UNENFORCEABLE | 4 |
| IV PLAINTIFF HAS NO STANDING TO VINDICATE THE RIGHTS OF OTHERS | 7 |
| V PLAINTIFF'S REQUEST FOR YARD TIME | 8 |
| VI PLAINTIFF'S REQUEST THAT HIS LEGAL DOCUMENTS NOT BE CONFISCATED AND THAT HE NOT BE DENIED LAW LIBRARY TIME | 12 |
| CONCLUSION | 13 |

Defs.' Opp'n to Pl.'s Mot. for a Prelim. Inj.                                08CV0191 H CAB

i

**TABLE OF AUTHORITIES**

|  | Page |
|---|---|
| **Cases** | |
| *Arcamuzi v. Continental Air Lines, Inc.*<br>819 F.2d 935 (9th Cir. 1987) | 3 |
| *C.E. Pope Equity Trust v. United States*<br>818 F.2d 696 (9th Cir. 1987) | 7 |
| *Caputo v. Fauver*<br>800 F. Supp. 168 (D.N.J. 1992)<br>*aff'd*, 995 F.2d 216 (3rd Cir. 1993) | 7 |
| *City of Angoon v. Marsh*<br>749 F.2d 1413 (9th Cir. 1984) | 3 |
| *City of Los Angeles v. Lyons*<br>461 U.S. 92 (1983) | 13 |
| *Department of Parks & Rec. for State of Calif. v. Bazaar Del Mundo, Inc.*,<br>48 F.3d 1118 (9th Cir. 2006) | 3 |
| *Farmer v. Brennan*<br>511 U.S. 825 (1994) | 4 |
| *Goff v. Harper*<br>60 F.3d 518 (8th Cir. 1995) | 4, 8-11 |
| *Goldie's Bookstore, Inc. v. Sup. Ct.*<br>739 F.2d 466 (9th Cir. 1984) | 13 |
| *Griffin v. Smith,*<br>493 F. Supp. 129, 131 (W.D.N.Y.1980) | 7 |
| *Hodgers-Durgin v. de la Vina*<br>199 F.3d 1037 (9th Cir. 1999) | 3 |
| *Hotel & Motel Ass'n of Oakland v. City of Oakland*<br>344 F.3d 959 (9th Cir. 2003) | 6 |
| *Intel Corp. v ULSI Systems Technology, Inc.,*<br>995 F.2d 1566 (Fed. Cir. 1993) | 3 |
| *Kolender v. Lawson*<br>461 U.S. 352 (1983) | 6 |
| *Lujan v. Defenders of Wildlife*<br>504 U.S. 555 (1992) | 3 |
| *Midgett v. Tri-County Metro. Transp. Dist. of Oregon*<br>254 F.3d 846 (9th Cir. 2001) | 3 |

Defs.' Opp'n to Pl.'s Mot. for a Prelim. Inj.                                                                  08CV0191 H CAB

## TABLE OF AUTHORITIES  (continued)

**Page**

*Natural Resources Defense Council, Inc. v. U.S.E.P.A.*
966 F.2d 1292 (9th Cir. 1992) ... 3

*Nunez v. City of San Diego*
114 F.3d 935 (9th Cir. 1997) ... 6

*Oxendine v. Williams*
509 F.2d 1405 (4th Cir.1975) ... 7

*Powers v. Ohio*
499 U.S. 400 (1991) ... 7

*Rizzo v. Goode*
423 U.S. 362 (1976) ... 4, 8

*Russell v. U.S.*
308 F.2d 78 (9th Cir. 1962) ... 7

*Stanley v. University of So. Calif.,*
13 F.3d 1313 (9th Cir. 1994) ... 3

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*
455 U.S. 489 (1982) ... 6

*Warsoldier v Woodford*,
18 F. 3d 989 (9th Cir. 2005) ... 3

*Warsoldier v Woodford*
418 F.3d 989 (9th Cir. 2005) ... 11

*Weinberger v. Romero-Barcelo*
456 U.S. 305 (1982) ... 3

**Statutes**

18 U.S.C.
   § 4042(a) ... 4

California Civil Code
   § 43 ... 4

California Code of Regulations Title 15
   § 3002 ... 4
   § 3269 ... 5, 6
   § 3322(c) ... 4
   § 3343(h) ... 4

Federal Rules of Civil Procedure
   § 23(a)(4) ... 7

Defs.' Opp'n to Pl.'s Mot. for a Prelim. Inj.                                       08CV0191 H CAB

iii

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Parra, Victor v. R. Hernandez, et al.**

No.:   **08CV0191 H CAB**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On September 2, 2008, I served the attached **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION and DECLARATION OF B. MORRIS IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 110 West A Street, Suite 1100, P.O. Box 85266, San Diego, CA 92186-5266, addressed as follows:

Victor Parra, Jr.
P-58682
Richard J. Donovan Correctional Facility at
Rock Mountain
P.O. Box 799006
San Diego, CA 92179-9006
In Pro Per
P-58682

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on September 2, 2008, at San Diego, California.

Laura Ruiz
Declarant

*/s/ Laura Ruiz*
Signature