1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  ROCHELLE C. EAST
   Senior Assistant Attorney General
4  MICHELLE DES JARDINS
   Supervising Deputy Attorney General
5  SYLVIE P. SNYDER, State Bar No. 171187
   Deputy Attorney General
6   110 West A Street, Suite 1100
    San Diego, CA 92101
7   P.O. Box 85266
    San Diego, CA 92186-5266
8   Telephone:  (619) 645-2299
    Fax:  (619) 645-2581
9   Email:  Sylvie.Snyder@doj.ca.gov

10 Attorneys for Defendants P. Cowan, R. Hernandez, W.
   Liles and R. Limon

11

12                **IN THE UNITED STATES DISTRICT COURT**

13           **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

14

15 | **VICTOR PARRA, Jr.,** | 08CV0191 H CAB |

16 | | |
   |                                     Plaintiff, | **DECLARATION OF B. MORRIS IN** |
17 | | **SUPPORT OF DEFENDANTS'** |
   | | **OPPOSITION TO PLAINTIFF'S** |
   | **v.** | **MOTION FOR A PRELIMINARY** |
18 | | **INJUNCTION** |
   | **R. HERNANDEZ, et al.,** | |
19 | | |
   |                                    Defendants. | Hearing:        September 15, 2008 |
20 | | Time:           N/A |
   | | Courtroom:      E |
21 | | Judge:          The Honorable |
   | | Cathy Ann |
22 | | Bencivengo |

23      I, B. Morris, declare as follows:

24      1.    I have worked at R.J. Donovan Correctional Facility since 1987.  I have been the

25 Facility Captain in charge of housing assignments for Administrative Segregated Housing Units

26 6 and 7, and overflow housing Unit 8 since March 2008.  I am very familiar with the inmate

27 capacity, yard limitations, uses, celling requirements and other aspects of Units 6, 7, and 8,

28 because such knowledge is part of my job requirements.

2.    If sworn as a witness I would be competent to testify to the facts contained herein as they are within my personal knowledge, except as to those facts submitted upon information and belief, and as to those facts, I believe them to be true.

3.    I have reviewed pertinent portions of Plaintiff's file as it is kept in the normal course of business at R. J. Donovan Correctional Facility and have determined Plaintiff was sent to Administrative Segregation because he assaulted his father, who was his cell mate at that time.

4.    Prior to his transfer to Unit 8 on June 30, 2008, Plaintiff was housed in Unit 7 where, barring unusual circumstances, inmates receive at least 10 hours of yard exercise in no less than three days a week.

5.    R.J. Donovan Correctional Facility has two Administrative Segregation units that have yard facilities, Units 6 and 7. Each of these units has 100 cells. Unit 6 has 63 beds reserved for certain designated-level mental health inmates. The remainder of beds I use mostly for inmates who are designed single-cell status due to certain specific case factors. I use Unit 7 as the primary unit for housing double-cell status inmates assigned to Administrative Segregation.

6.    An inmate's cell status is determined by a committee who reviews several case factors in determining whether the inmate is suitable for double-cell housing.

7.    Due to overcrowding, Units 6 and 7 do not have enough bed space for all the inmates who need to be housed in Administrative Segregation.

8.    Because of the overcrowding and the need for Administrative Segregation bed space, Unit 8 is currently used as temporary overflow housing for inmates assigned to Administrative Segregation.

9.    Unit 8 currently has no yard facilities, and no staffing for yard.

10.    The institution is in the process of building "walk-alone" yards to service Administrative Segregation Units, including Unit 8.

11.    Administrative Segregation inmates must either be sent to yard alone, or can only be sent with a very limited and carefully selected number of inmates.

12.    The greater the number of inmates I double-cell in Unit 7 results in the greater number of inmates who get yard time.

Decl. of B. Morris in Supp. of Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj.          Case No. 08CV0191 H CAB

2

13.   For every Unit 7 cell with only one inmate, there is one inmate who must be housed in Unit 8, and is, therefore, not able to be provided yard.

14.   Although Unit 7 is budgeted for 150 inmates to be housed in its 100 cells, I use it to house potentially up to 200 inmates in order to maximize the number of inmates who have yard time.

15.   In order to maximize the number of inmates who have yard time, I house double-cell-status inmates who do not refuse to double-cell in Unit 7.

16.   In order to maximize the number of inmates who have yard time, if a double-cell-status inmate refuses to double cell, then that inmate is moved to Unit 8 and two inmates from Unit 8 who do not refuse to double-cell are moved to Unit 7.

17.   In order to move Unit 8 inmates back to Unit 7 as quickly as possible, I take steps to allow inmates to interact to find a suitable cell mate.  It has been my experience that the biggest impediment to inmates finding a cell mate is that they do not know the other inmates.

18.   Due to safety concerns, Administrative Segregation inmates must be handcuffed and escorted whenever they leave their cell, and they are not allowed to congregate in the day room or other areas as they might if they were a general population inmate.  This makes it difficult for Administrative Segregation inmates to have opportunities to interact.

19.   To allow inmates to interact, I oversee that five to seven inmates, who from their files are potentially housing compatible, are placed in holding cells located in the Unit 8 day room area for one to four hours to allow them to see and speak with each other and get to know each other, and find an inmate with whom to cell.

20.   Once inmates agree to double-cell, it generally takes about one week for a cell in Unit 7 to become available to transfer those inmates to that unit.

21.   I provide this type of interaction one or two times a week or more depending on the need.

22.   On August 26, 2008, and most likely on several other occasions prior to this,  inmate Parra was part of a group of approximately seven inmates who were placed in the holding cells for approximately three hours to be allowed to interact.

Decl. of B. Morris in Supp. of Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj.          Case No. 08CV0191 H CAB

3

1    23.   I do not keep lists of inmates who are brought to the holding cell to interact with other

2    inmates.   Prior to August 26, 2008, I did not specifically know inmate Parra by name.  When I

3    saw Parra's name on August 26, 2008, as one of the inmates in the holding cell group, I

4    recognized it from my interaction with the prison's Litigation Coordinator relating to providing

5    information in connection with defending this lawsuit.  At that point, I noted my interaction with

6    inmate Parra.  It is very likely inmate Parra was in other holding cell groups prior to August 26,

7    2008, because inmate Parra would have been the type of inmate I routinely placed into these

8    groups in order to facilitate moving inmates out of Unit 8 to Unit 7.

9    24.   On August 26, 2008, Parra did not attempt to interact with the other inmates, and did

10   not advise staff he found someone with whom to double-cell.

11   25.   When I asked Parra why he would not double-call, Parra said it was because cell mates

12   stole his property, specifically mentioning his address book and because he felt nothing was

13   done about it.

14   26.   Inmates who do not find their own cell mates, are periodically matched up by myself

15   or my staff with compatible inmates, and are ordered to accept that inmate as a cell mate.

16   27.   If an inmate refuses the cell mate, they are issued a Rules Violation Report.  Generally,

17   the adjudication of a Rules Violation Report takes about 30 days.  A new Rules Violation Report

18   for refusing a cell mate can only be issued when no Rules Violation Reports for this offense are

19   pending.  Thus, this matching can only be done about every 30 days.

20   28.   When an inmate refuses to double-cell, the institution does not force the inmate into

21   the cell with the other inmate; at most, the inmate is brought to the cell door, and ordered to

22   enter, but upon refusal, he is not forcefully pushed into the cell.  Rather, the inmate is issued a

23   Rules Violation Report for refusing an order to double-cell.

24   29.   In taking the steps of letting inmates get to know each other and if that fails

25   unilaterally matching them up, I am doing the best I can to provide yard for the greatest number

26   of inmates within the confines of the prison population and the limited resources.

27

28

Decl. of B. Morris in Supp. of Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj.        Case No. 08CV0191 H CAB

4

1    30.   At least on August 18, 2008, Parra was matched up with an inmate who appeared

2  compatible, and was ordered to double-cell with that inmate.  Parra refused the cell mate

3  assignment.

4    31.   If Parra agreed to double-cell with another inmate, he could be moved into Unit 7 most

5  likely within one week.

6    32.   Since June 20, 2008, or shortly thereafter, Parra has refused to double-cell.

7    I declare under penalty of perjury under the laws of the State of California and of the United

8  States that the foregoing is true and correct and that this declaration was executed on September

9  _____ 2008, at San Diego, California.

10

11                                                    _____

                                                     B. Morris

12

13

14   70135039.wpd
     SD2008700335

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Decl. of B. Morris in Supp. of Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj.          Case No. 08CV0191 H CAB

5

1    30.  At least on August 18, 2008, Parra was matched up with an inmate who appeared

2   compatible, and was ordered to double-cell with that inmate.  Parra refused the cell mate

3   assignment.

4    31.  If Parra agreed to double-cell with another inmate, he could be moved into Unit 7 most

5   likely within one week.

6    32.  Since June 20, 2008, or shortly thereafter, Parra has refused to double-cell.

7    I declare under penalty of perjury under the laws of the State of California and of the United

8   States that the foregoing is true and correct and that this declaration was executed on September

9   2, 2008, at San Diego, California.

10

11                                                              B. Morris

12

13

14   70135039 wpd
     SD2008700335

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Decl. of B. Morris in Supp. of Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj.          Case No. 08CV0191 H CAB

                                                      5